STATE OF NORTH CAROLINA v. MARCOS DEVON BRYANT

No. COA08-962

(Filed 7 April 2009)

### 1. Homicide— first-degree murder—failure to instruct on voluntary manslaughter

The trial court did not err in a first-degree murder case by refusing to instruct the jury on voluntary manslaughter based on imperfect self-defense because, even assuming *arguendo* the trial court was required to do so, the error was rendered harmless by the jury verdict when the trial court submitted the possible verdicts of first-degree murder based on premeditation and deliberation, second-degree murder, and not guilty, and the jury found defendant guilty of first-degree murder based on premeditation and deliberation.

### 2. Search and Seizure— warrant—motion to suppress—notebook with rap lyrics

The trial court did not err in a first-degree murder case by denying defendant's motion to suppress rap lyrics about the murders found in a notebook seized from his vehicle even though defendant contends the notebook and its contents were not listed as items to be seized in the warrant and were not immediately apparent to the officer as evidence of the crime because: (1) the seizure of the notebook was authorized by the terms of the search warrant when the warrant expressly stated the police were looking for documents showing ownership, control, and access that constituted evidence of a crime and the identity of the person(s) participating in a crime; (2) it was not unreasonable for a detective to examine the contents of the notebook and conclude the rap lyrics were evidence of the crime after the detective made out the identifying information on the front of the notebook; and (3) discussion of the plain view exception is not necessary when the seizure of the notebook was based upon a valid search warrant.

Appeal by defendant from judgment entered 13 February 2008, by Judge A. Moses Massey in Forsyth County Superior Court. Heard in the Court of Appeals 29 January 2009.

STATE v. BRYANT

[196 N.C. App. 154 (2009)]

*Attorney General Roy Cooper, by Special Deputy Attorney General Edwin W. Welch, for the State.*

*Kathryn L. VandenBerg for the defendant-appellant.*

STEELMAN, Judge.

Any error by the trial court in failing to instruct the jury on voluntary manslaughter based on imperfect self-defense was rendered harmless by the jury's verdict of first-degree murder under the theory of premeditation and deliberation. The seizure of a notebook from defendant's vehicle was based upon a valid search warrant.

## I. Factual and Procedural Background

On 16 January 2006, at about 2:30 a.m., William Chavis Miller (Miller) fired approximately twenty rounds from an AK-47 assault rifle into the residence occupied by Marcos Devon Bryant (defendant) and others in Winston-Salem. No one was injured by the shooting. Defendant's roommate identified Miller as the shooter. Miller subsequently acknowledged that he was the perpetrator of the shooting to several people. The motivation for the shooting is not clear from the record.

On the morning after the shooting, defendant stated that "I got to get him" and "he was sending for his chopper." On 16 January 2006, defendant traveled to Loris, South Carolina, where he purchased a MAK-90 assault rifle. On 17 January 2006 at 8:18 p.m., defendant purchased four or five boxes of 7.62 mm. ammunition at a Wal-Mart in Winston-Salem. The ammunition was three boxes of Winchester Brand and possibly one box of Remington Brand. Defendant worked at the Wal-Mart. At about 11:15 p.m. on 17 January 2006, defendant called Miller and told him that he wanted to "squash the beef before somebody got hurt." He also offered to sell Miller some athletic shoes and some marijuana. Defendant called Miller again at about 11:40 p.m. and told him to meet him at the intersection of First and Lowery. Defendant picked up "Turk" Perry (Perry) and Brandon Staton (Staton), who accompanied defendant to the meeting. Defendant was armed with his MAK-90, and Perry was armed with his AK-47. Defendant and Perry got out of the car and waited for Miller. Staton remained in the car.

About 12:40 a.m. on 18 January 2006, Miller drove up accompanied by Marcus Wilson (Wilson). As soon as Miller and Wilson got out of their car, defendant and Perry emerged from the shadows on a

porch and began firing their assault rifles. Miller and Wilson ran behind some houses. Defendant chased them down, firing his assault rifle. The bodies of Miller and Wilson were found in a field approximately 100 yards behind the house. Each had six bullet wounds, mostly in the back. Defendant fired almost all of the thirty rounds in the clip for his MAK-90. Crime scene investigators found thirty-six shell casings, most of which were fired from defendant's weapon. Approximately eight casings were from another weapon. There were no weapons of any kind found upon or near Miller and Wilson. The entire melee lasted for about thirty seconds.

At trial, defendant testified that when Miller arrived, he observed a red light in Miller's car that seemed to be pointed at him. He also testified that he heard a shot. Defendant then began shooting at Miller and Wilson, chasing them, and ultimately killing them. He testified he was concerned that if he stopped shooting, Miller and Wilson would shoot him.

After the shootings, defendant voluntarily went to the police department the afternoon of 18 January 2006 for an interview. Defendant initially told police he had not met with Miller on the night of the shootings. He admitted to owning the MAK-90 but said it had been stolen. Defendant took police out to his vehicle and provided them with two items: a slip of paper with Miller's cell phone number written on it, and the receipt for the MAK-90. Defendant also consented to a search of his vehicle and his residence.

On 7 February 2006, defendant was arrested while attending class at Winston-Salem State University. Defendant's vehicle was locked and sitting in a parking lot. Police seized defendant's vehicle and obtained a search warrant on 9 February 2006.

During the course of the search, police seized a tan jacket from defendant's vehicle, which defendant wore on the night of the shootings. The jacket tested positive for gunshot residue. Police also seized a black notebook from the front floorboard of the vehicle. Detective Taylor testified that he could "make out" defendant's first name and two phone numbers on the front of the notebook. Inside the notebook, police found rap lyrics defendant had written about the shootings. Defendant later admitted that he wrote the song.

On 22 January 2008, defendant filed a Motion to Suppress and Motion to Exclude Evidence of "Writings" dated "1-24-2006." The trial court denied defendant's motion and held that the search warrant was supported by probable cause, and after looking at the totality of

the circumstances, "detectives did not need a search warrant to legally seize and subsequently search the defendant's vehicle on February 8, 2006, given that the search was incident to a valid arrest of the defendant and given the inherent mobility of the subject of the search . . . ."

As to each murder charge, the trial court instructed the jury on first-degree murder under a theory of premeditation and deliberation, first-degree murder under a theory of lying in wait, second-degree murder, and not guilty. The trial court denied defendant's request for an instruction on voluntary manslaughter based on imperfect self-defense. Defendant was found guilty of each charge of first-degree murder under the theory of premeditation and deliberation. Defendant was sentenced to concurrent life sentences.

Defendant appeals.

## II. Instruction on Voluntary Manslaughter based on imperfect self-defense

[1] In his first argument, defendant contends the trial court erred in refusing to instruct the jury on voluntary manslaughter based on imperfect self-defense. We disagree.

Defendant contends that his killing of Miller and Wilson was a result of his reasonable fear of death or bodily harm because Miller shot into his residence two days earlier, and he heard a gun shot when the victims stepped out of their vehicle. Defendant argues that the jury could have found it reasonable for defendant to believe that deadly force was reasonably necessary to protect himself from harm.

We decline to discuss this issue because even assuming *arguendo* that the trial court was required to instruct the jury on voluntary manslaughter based on self-defense, we conclude the error was rendered harmless by the jury verdict.

Our law states "that when the trial court submits to the jury the possible verdicts of first-degree murder based on premeditation and deliberation, second-degree murder, and not guilty, a verdict of first-degree murder based on premeditation and deliberation renders harmless the trial court's improper failure to submit voluntary or involuntary manslaughter." *State v. Price,* 344 N.C. 583, 590, 476 S.E.2d 317, 321 (1996).

One rationale is that in finding the defendant guilty beyond a reasonable doubt of first-degree murder based on premeditation and

deliberation and rejecting second-degree murder, the jury necessarily rejected, beyond a reasonable doubt, the possibilities that the defendant acted in the heat of passion or in imperfect self-defense (voluntary manslaughter) or that the killing was unintentional (involuntary manslaughter).

*Id.*

This argument is without merit.

### III.  Admission of the Rap Lyrics Contained in a Notebook Seized from Defendant's Vehicle

[2] In his second argument, defendant contends that the trial court erred in denying his motion to suppress rap lyrics found in a notebook seized from his vehicle because the notebook and its contents were not listed as items to be seized in the warrant and were not immediately apparent to the officer as evidence of a crime. We disagree.

In reviewing the trial court's denial of a motion to suppress, our standard of review is whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law. *State v. Cockerham*, 155 N.C. App. 729, 736, 574 S.E.2d 694, 699 (2003) (citing *State v. Wynne*, 329 N.C. 507, 522, 406 S.E.2d 812, 820 (1991)), *disc. review denied*, 357 N.C. 166, 580 S.E.2d 702 (2003).

> [A trial court's] findings of fact "are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Eason*, 336 N.C. 730, 745, 445 S.E.2d 917, 926 (1994), *cert. denied*, 513 U.S. 1096, 130 L. Ed. 2d 661 (1995). "Conclusions of law that are correct in light of the findings are also binding on appeal." *State v. Howell*, 343 N.C. 229, 239, 470 S.E.2d 38, 43 (1996).

*State v. Brewington*, 352 N.C. 489, 498, 532 S.E.2d 496, 501 (2000), *cert. denied*, 531 U.S. 1165, 148 L. Ed. 2d 992 (2001).

When denying defendant's motion to suppress, the trial court stated "there was not the necessity for the state to put on evidence as the state normally does on a motion to suppress, because I believe counsel were basically in agreement about what the facts were . . . ." In its Conclusions of Law, the trial court held:

> That in any event the search warrant at issue was supported by probable cause, and that the detectives' failure to mention

the name of the witness who provided the description of the defendant's car does not render the search warrant invalid under the totality of the circumstances, and especially in light of the fact that the defendant admitted to operating his 1995 Oldsmobile Aurora in the vicinity of the crimes near the time of the shootings[.]

We conclude that the seizure of the notebook was authorized by the terms of the search warrant. The application for a search warrant stated:

[R]equest that the court issue a warrant to search the item(s) described in this application and to find, seize, and examine the contents there of the property describe[d] in this application. There is probable cause to believe that a firearm, ammunition, firearm documentation, blood, DNA, trace, fingerprint evidence, and documents showing ownership, control and access constitutes evidence of a crime and the identity of the person(s) participating in a crime.

At trial, Detective Taylor testified that he could see defendant's name and two phone numbers imprinted on the front of the notebook. The numbers were significant to him because the two phone numbers corresponded to the two phones defendant had on his person when he was arrested. Once Detective Taylor could make out the identifying information on the front of the notebook, it was not unreasonable for him to examine the contents of the notebook and conclude that the rap lyrics were evidence of the crime. The warrant expressly stated that police were looking for "documents showing ownership, control and access [that] constitutes evidence of a crime and the identity of the person(s) participating in a crime."

"G.S. 15A-242(4) allows the seizure of items pursuant to a search warrant when there is probable cause to believe that the items constitute 'evidence of an offense or the identity of a person participating in an offense.'" *State v. Tate*, 58 N.C. App. 494, 499-500, 294 S.E.2d 16, 19 (1982), *disc. review denied*, 306 N.C. 750, 295 S.E.2d 763 (1982). The notebook was such an item.

Contrary to defendant's assertion, we hold that the notebook and its contents were encompassed in the search warrant's description of items for which the officers were permitted to search. The trial court properly allowed the notebook, and therefore, the contents of the notebook (rap lyrics) into evidence.

KRANZ v. HENDRICK AUTO. GRP., INC.

[196 N.C. App. 160 (2009)]

Defendant also contends that the trial court "made no factual findings relating to the plain view exception or whether the scope of the search was reasonable or permissible." Defendant argues that the trial court's findings only related to whether there was probable cause to support the search. Because we find that the seizure of the notebook was based upon a valid search warrant, it is not necessary for us to discuss the plain view exception.

This argument is without merit.

Defendant has failed to argue his remaining assignments of error in his brief, and they are thus deemed abandoned pursuant to Rule 28(b)(6) of the Rules of Appellate Procedure.

NO ERROR.

Judges GEER and STEPHENS concur.