NO. COA14-752

 NORTH CAROLINA COURT OF APPEALS

 Filed: 20 January 2015

STATE OF NORTH CAROLINA

 v. Wake County
 No. 13 CRS 203743
VAN LAMAR MCKNIGHT

 Appeal by Defendant from judgment entered 6 December 2013

by Judge R. Allen Baddour in Wake County Superior Court. Heard

in the Court of Appeals 6 November 2014.

 Attorney General Roy Cooper, by Special Deputy Attorney
 General R. Marcus Lodge, for the State.

 Appellate Defender Staples Hughes, by Assistant Appellate
 Defender Jason Christopher Yoder, for Defendant.

 STEPHENS, Judge.

 Defendant Van Lamar McKnight was convicted in Wake County

Superior Court of one count of trafficking in marijuana by

possession and one count of trafficking in marijuana by

transportation. Defendant now appeals from the trial court’s

denial of his motion to suppress evidence that he alleges was

obtained in violation of his Fourth Amendment rights. Defendant

also contends that the trial court committed plain error by
 -2-
denying his motion in limine to exclude evidence that was both

irrelevant and prejudicial. After careful review, we hold the

trial court did not err in denying Defendant’s motion to

suppress, nor did it commit plain error by admitting the

evidence Defendant challenges.

 I. Facts and procedural history

 On 5 August 2013, Defendant was indicted by a Wake County

grand jury on one count of trafficking in marijuana by

possession and one count of trafficking in marijuana by

transportation. Those charges arose from Defendant’s arrest on

14 February 2013 after officers from the Raleigh Police

Department (“RPD”) stopped and searched his vehicle and

discovered more than ten pounds of marijuana concealed in two

packages during their ongoing investigation of Defendant’s

friend, Travion Stokes.

 The evidence introduced at Defendant’s trial tended to show

that in November 2012, the RPD learned from a confidential

informant that Stokes, who at the time was on probation for a

federal cocaine trafficking conviction, was trafficking in large

amounts of marijuana. On 12 February 2013, after conducting

several weeks of undercover surveillance and a controlled buy

using the confidential informant, RPD Detective James Battle
 -3-
searched a trash can left by the curb at Stokes’ residence at

601 Sawmill Road in Raleigh and found a plastic baggie

containing less than one-tenth of a gram of marijuana residue.

Based on this information, Detective Battle obtained a search

warrant for Stokes and his residence.

 On the morning of 14 February 2013, Detective Battle and

RPD Detective Sarah Goree stationed themselves in unmarked

police vehicles near Stokes’ residence to conduct pre-raid

surveillance prior to executing the search warrant, while RPD

Officer Keith Pickens parked his marked patrol car farther away

at a nearby intersection as back-up. The officers did not have

access to a S.W.A.T. team that day, so their plan was to stop

Stokes in his automobile after he left his home and then execute

the search warrant for his residence. Around 8:30 a.m., Stokes

drove a pickup truck into his driveway, parked at the rear of

the house, and went inside. Around 8:45 a.m., Defendant——whom

RPD officers had not previously seen during the course of their

investigation——arrived at Stokes’ home driving a GMC Acadia

sport utility vehicle, which he parked in the front. Stokes then

came out of the house and the two men removed two large white

boxes from Stokes’ pickup truck, carried them around to the

front of the house, and placed them in the back of Defendant’s
 -4-
vehicle. The boxes were sealed shut and did not appear very

heavy.

 When Defendant got back in his Acadia and drove away,

Detective Goree and Sergeant Charles Lynch, another officer in

an unmarked vehicle, followed him, as did Officer Pickens at a

distance to avoid being seen in his patrol car. The officers

followed Defendant for roughly ten to fifteen minutes, during

which they did not observe any traffic violations, until

Defendant unexpectedly backed his Acadia into a residential

driveway at 7202 Shellburne Drive. Detective Goree continued

past the driveway and lost visual contact with Defendant.

Sergeant Lynch continued past the driveway as well and saw

Defendant pull back out into the road without getting out of his

car. Officer Pickens, who had not yet reached the driveway,

heard over the radio that his colleagues were unable to continue

following Defendant, and thereupon activated his patrol car’s

lights and pulled Defendant over.

 Officer Pickens, who later testified that he noticed

Defendant seemed slightly nervous but was otherwise acting

normally, ordered Defendant out of the Acadia and had him sit on

the curb until RPD Detective Kenneth Barber joined them a few

minutes later. Detective Barber later testified that upon his
 -5-
arrival, he smelled burnt marijuana through the Acadia’s open

window and decided to conduct a search. No burnt marijuana was

found during the search of Defendant’s vehicle, but when the

officers inspected the two boxes Defendant had taken from

Stokes’ house, they discovered that inside each box was another,

smaller box containing a shrink-wrapped orange plastic bucket.

These buckets, in turn, contained 5.8 and 4.9 pounds of

marijuana in sealed plastic bags.

 Defendant was arrested and taken to a police station for

interrogation, during which Detective Battle found a key among

the contents of Defendant’s pockets. Detective Battle

subsequently discovered the key fit the lock on the front door

of the residence at 7202 Shellburne Drive, where he smelled

marijuana through the doorframe. After obtaining a search

warrant, RPD officers returned to that residence and found 91

grams of marijuana hidden above a kitchen cabinet. They also

found paraphernalia including two digital scales, Ziploc bags,

and a vacuum food saver machine in the kitchen. In the attic of

the home, the officers found a freezer-sealed bag of marijuana,

a black trash bag with sealed marijuana inside, and a small

orange-red bucket. The officers also searched for documents to

show who owned the house and found bank records in the name of
 -6-
Revaune Moe, who had two prior drug arrests, as well as a

uniform citation for a man named Cory Robinson and letters

addressed to him and a man named Andre Turner. They found no

evidence linking Defendant to the house, and he was not charged

with possession of any of the drugs recovered there.

 When Defendant’s trial in Wake County Superior Court began

on 2 December 2013, his primary defense was that he did not know

there was marijuana in the boxes he received from Stokes.

Defendant first moved to suppress the marijuana found in his

Acadia, arguing that it was the product of an unconstitutional

seizure because the RPD officers lacked reasonable suspicion to

stop his vehicle. Defendant’s voir dire examination of the

officers involved in his arrest showed that: (1) prior to

arriving at Stokes’ home on 14 February 2013, Defendant had not

previously been a target of the investigation and was not listed

on the search warrant for Stokes’ residence; (2) no money

changed hands when Defendant accepted the boxes from Stokes; and

(3) Defendant had not been driving erratically or committed any

traffic violations before being stopped by Officer Pickens. The

State opposed the motion to suppress, arguing that: (1) the RPD

officers did not initiate a search of Defendant while he was

still on Stokes’ property due to safety concerns given the lack
 -7-
of a S.W.A.T. team but were still justified in stopping

Defendant after he left under a theory that he was taking

evidence from a crime scene; and (2) Defendant’s backing into

the driveway at 7202 Shellburne Drive and then leaving without

getting out of his vehicle constituted evasive action sufficient

to support a reasonable suspicion that criminal activity was

afoot. The trial court denied Defendant’s motion, concluding,

inter alia, that:

 2. The officers possessed probable cause to
 search the residence and person of Travion
 Stokes for controlled substances, as
 evidenced by a lawfully issued search
 warrant.

 3. The officers determined that their
 manpower did not permit the safe execution
 of the search warrant while [D]efendant was
 on the premises with Travion Stokes, and the
 observation of the officers of the transfer
 of two large packages into [D]efendant’s
 vehicle, [D]efendant’s evasive action of
 pulling into a residence momentarily, when
 viewed in light of the totality of the
 circumstances, support a finding of a
 reasonable, articulable suspicion justifying
 the officers in stopping the [D]efendant’s
 vehicle.

Defendant failed to object when this evidence was introduced at

trial.

 Defendant also filed both a motion to suppress the evidence

found at 7202 Shellburne Drive and a motion in limine to exclude
 -8-
it after the State gave notice that it planned to introduce that

evidence for the purpose of proving Defendant’s knowledge of the

contents of the boxes he received from Stokes, given the fact

that he “was taking [the boxes] from one residence where

[police] found marijuana directly to another residence where

they found marijuana,” as well as the similarities in packaging

between the marijuana found in the Acadia and the marijuana

found in the attic. The trial court denied Defendant’s motion to

suppress because, apart from possessing a key to 7202 Shellburne

Drive, Defendant could not establish any basis that would give

him a legitimate expectation of privacy at that residence. In

his motion in limine, Defendant argued that the evidence was

irrelevant, prejudicial, and would confuse the issues for the

jury because he had not been charged with any crime involving

7202 Shellburne Drive. Defendant also highlighted

dissimilarities between the evidence seized from his car and the

evidence seized from the attic, including differences in the

grade of marijuana, the types of bags containing it, and the

colors of the buckets found nearby. The trial court denied

Defendant’s motion, and Defendant failed to timely object when

the evidence was admitted at trial to preserve the issue for

review.
 -9-
 Defendant chose to testify at his trial, and although he

acknowledged to having pled guilty to possession of marijuana

with intent to sell and deliver in 2009, he insisted that he had

no knowledge that the boxes he received from Stokes on 14

February 2013 contained marijuana. Instead, he testified that

Stokes had called him that morning and said he was running late

for a doctor’s appointment, asked him to drop off the boxes at

7202 Shellburne Drive as a favor, and given him a key to the

residence. Defendant testified that he had known Stokes for

about a year and that the two men had become friends through

their shared enthusiasm for motorcycles. Defendant admitted that

he had been aware that Stokes was on federal probation for drug

charges, but assumed that this actually provided a strong

incentive for Stokes to avoid further illegal activity. In any

event, Defendant explained, the boxes were already sealed before

he received them, Defendant never asked what they contained, and

he did not have an opportunity to learn their contents before

the RPD pulled him over. Defendant testified that he was unaware

that he was being followed when he backed into 7202 Shellburne

Drive, and that the reason he left so quickly was that he

received a cellphone call from his wife——who was upset because

she needed her son’s car seat from the back of the Acadia to
 -10-
give to a babysitter so the couple could enjoy a date together —

—and that even though he was already at his destination and did

not want to make another trip, he decided to drive back across

town and then return again to 7202 Shellburne Drive to deliver

the boxes because it was Valentine’s Day.

 On 6 December 2013, the jury returned a verdict finding

Defendant guilty of both charges against him. The trial court

consolidated the counts into a single judgment and sentenced

Defendant to a term of 25 to 39 months in prison. Defendant gave

oral notice of appeal in open court.

 II. Defendant’s motion to suppress

 Defendant argues that the trial court erred in denying his

motion to suppress the marijuana found in the boxes he received

from Stokes because the RPD officers who stopped and searched

his vehicle lacked reasonable suspicion to do so and thus

violated his Fourth Amendment rights. We disagree.

 Typically, this Court’s review of a denial of a motion to

suppress “is strictly limited to determining whether the trial

[court’s] underlying findings of fact are supported by competent

evidence, in which event they are conclusively binding on

appeal, and whether those factual findings in turn support the

[court’s] ultimate conclusions of law,” which are then subject
 -11-
to de novo review. State v. Mello, 200 N.C. App. 437, 439, 684

S.E.2d 483, 486 (2009) (citation and internal quotation marks

omitted), affirmed per curiam, 364 N.C. 421, 700 S.E.2d 224

(2010). However, Defendant acknowledges that because he failed

to preserve this issue for appellate review by timely objecting

when the evidence was admitted at trial, the standard of review

is plain error. Under a plain error analysis, Defendant is

entitled to a new trial only if he can demonstrate that the

trial court committed an error “so fundamental as to amount to a

miscarriage of justice or which probably resulted in the jury

reaching a different verdict than it otherwise would have

reached.” State v. Brunson, 187 N.C. App. 472, 477, 653 S.E.2d

552, 555 (2007) (citation omitted).

 The Fourth Amendment protects the “right of the people . .

. against unreasonable searches and seizures,” U.S. Const.

amend. IV, and is applicable to the states through the Due

Process Clause of the Fourteenth Amendment. See Mapp v. Ohio,

367 U.S. 643, 655, 6 L. Ed. 2d 1081, 1090 (1961). It applies to

seizures of the person, including brief investigatory detentions

such as those involved in stopping a vehicle. Reid v. Georgia,

448 U.S. 438, 440, 65 L. Ed. 2d 890, 893 (1980). It is well

established that in order to conduct an investigatory stop,
 -12-
police must have a reasonable suspicion that criminal activity

may be afoot. See Terry v. Ohio, 392 U.S. 1, 30, 20 L. Ed. 2d

889, 911 (1968).

 As our Supreme Court has explained, “[a]n investigatory

stop must be justified by a reasonable suspicion, based on

objective facts, that the individual is involved in criminal

activity.” State v. Watkins, 337 N.C. 437, 441, 446 S.E.2d 67,

70 (1994) (citation and internal quotation marks omitted). In

reviewing whether a reasonable suspicion to make an

investigatory stop exists, this Court “must consider the

totality of the circumstances——the whole picture” to determine

if the stop was “based on specific and articulable facts, as

well as the rational inferences from those facts, as viewed

through the eyes of a reasonable, cautions officer, guided by

his experience and training.” Id. (citations and internal

quotation marks omitted).

 In the present case, Defendant argues that the trial court

plainly erred in its finding of fact and conclusion of law that

his act of turning around in the driveway at 7202 Shellburne

Drive constituted evasive action sufficient to support a

reasonable suspicion for an investigatory stop of his vehicle.

Specifically, Defendant argues that the trial court’s findings
 -13-
and conclusions were unsupported by competent evidence, given

that neither of the two RPD officers who followed him in

unmarked vehicles testified that his conduct provided any

indication that he was aware they were following him, let alone

that he was driving evasively. In support of his argument,

Defendant cites this Court’s holding in State v. White, 214 N.C.

App. 471, 712 S.E.2d 921 (2011), that to support a finding of

evasive action, the State must “establish a nexus between [a

d]efendant’s flight and the police officers’ presence.” Id. at

480, 712 S.E.2d at 928. Since the State failed to establish such

a nexus here, Defendant argues that the trial court plainly

erred by improperly admitting the only physical evidence that he

possessed and transported marijuana.

 It is well established under state and federal law that

although mere presence in a high crime area is not sufficient to

support a reasonable suspicion that an individual is involved in

criminal activity, an individual’s presence in a suspected drug

area coupled with evasive action may provide an adequate basis

for the reasonable suspicion necessary for an investigatory

stop. See Illinois v. Wardlow, 528 U.S. 119, 145 L. Ed. 2d 570

(2000); State v. Butler, 331 N.C. 227, 233-34, 415 S.E.2d 719,

722–23 (1992). However, as we explained in White, in order for
 -14-
an action to be considered evasive, the State must “establish a

nexus between [a d]efendant’s flight and the police officers’

presence.” 214 N.C. App. at 480, 712 S.E.2d at 928. Prior

decisions by this Court and our Supreme Court make clear that a

defendant cannot be found to have acted evasively unless there

is some evidence that he was aware he was being followed by, or

in the presence of, a police officer. See, e.g., Butler, 331

N.C. at 233, 415 S.E.2d at 722 (finding evasive action where

“upon making eye contact with the uniformed officers, [the]

defendant immediately moved away, behavior that is evidence of

flight”); State v. Willis, 125 N.C. App. 537, 539, 481 S.E.2d

407, 409 (1997) (finding evasive action where a defendant

behaved nervously and cut across a parking lot on foot after it

became “apparent to [him]” that he was being followed).

 Here, Defendant’s argument about evasive action has some

merit. Neither of the two RPD officers who followed him in

unmarked cars testified that he acted evasively or that his

conduct indicated his awareness of the fact he was being

followed. Indeed, as Defendant notes, during the suppression

hearing the only testimony indicating evasive driving came from

Officer Pickens, who was following the two unmarked police cars

at a distance and did not directly observe Defendant until after
 -15-
Defendant had already pulled out of the driveway. When asked

about Defendant’s driving, Officer Pickens testified:

 Q: Do you remember anything significant
 about your approach to the vehicle?

 A: No. I mean, some of the radio traffic
 that was being relayed to me, that the
 [D]efendant was being evasive in the way
 that he was operating his vehicle. Again, I
 believe he had maybe realiz[ed] that he was
 being followed.

 [Defendant’s counsel]: Objection to that,
 [Y]our Honor; move to strike.

 THE COURT: Sustained.

 A: The information that I was hearing was
 that the operation of his vehicle was such
 that he would not be followed any longer by
 one of the detectives [who] was in one of
 the unmarked vehicles.

Officer Pickens further testified that he did not personally

observe anything unusual about how Defendant operated his

vehicle before pulling him over. Thus, we conclude that there is

no competent evidence in the record that indicates Defendant was

aware that his Acadia was being followed by police. Therefore,

because Defendant’s act of turning around in the driveway at

7202 Shellburne Drive cannot properly be considered evasive, we

hold that the trial court erred in its finding of fact and

conclusion of law that Defendant acted evasively.
 -16-
 However, that does not end our inquiry, as our Supreme

Court had made clear that “[a] correct decision of a lower court

[on a motion to suppress] will not be disturbed on review simply

because an insufficient or superfluous reason is assigned.”

State v. Austin, 320 N.C. 276, 290, 357 S.E.2d 641, 650, cert.

denied, 484 U.S. 916, 98 L. Ed. 2d 224 (1987). Even where the

trial court’s reasoning for denying a defendant’s motion to

suppress is incorrect, “we are not required on this basis alone

to determine that the ruling was erroneous,” because “[t]he

crucial inquiry for [this Court] is admissibility and whether

the ultimate ruling was supported by the evidence.” Id.

(citations and internal quotation marks omitted).

 Here, Defendant contends that absent the finding of evasive

action, the RPD officers’ personal observations of him at

Stokes’ residence provided no other basis for reasonable

suspicion to stop his vehicle. Specifically, Defendant contends

that the trial court erred in concluding that the search warrant

for Stokes’ residence was a factor supporting reasonable

suspicion against him because “[a]n individual’s presence in an

area of expected criminal activity, standing alone, is not

enough to support a reasonable, particularized suspicion that

the person is committing a crime.” Wardlow, 528 U.S. at 124, 145
 -17-
L. Ed. 2d at 586. Moreover, Defendant contends that the transfer

of boxes from Stokes’ truck to Defendant’s Acadia was also

insufficient to support a reasonable suspicion that a drug

transaction had occurred, given that the officers never observed

any money changing hands that morning and never in their months-

long surveillance of Stokes witnessed him sell any marijuana

from his home, utilize large boxes to transport it, or interact

with Defendant in any way.

 We find Defendant’s argument unpersuasive. While it is true

that an individual’s mere presence in an area of expected

criminal activity does not by itself give rise to reasonable

suspicion, the record before us indicates that Defendant was

more than merely present at Stokes’ home, insofar as he accepted

two large boxes from Stokes, carried them to his Acadia, put

them inside, and drove away. Further, Defendant’s argument that

there was nothing inherently suspicious about those two large

boxes ignores the fact that RPD officers had already obtained a

warrant to search Stokes and his residence for evidence of

marijuana trafficking, which implicitly authorized them to

search any container capable of carrying marijuana, including

the boxes. See, e.g., State v. Bryant, 196 N.C. App. 154, 674

S.E.2d 753, disc. review denied, 363 N.C. 375, 679 S.E.2d 135
 -18-
(2009) (holding that officers executing a search warrant may

legally seize any object encompassed within its description of

items to be searched).

 In his brief, Defendant suggests that the scope of the

search warrant did not include Stokes’ car; however, the warrant

was not included in the record on appeal and Defendant does not

specifically challenge its validity, nor would he have standing

to do so, given the absence of evidence that he either owned or

held a possessory interest in Stokes’ residence or maintained a

reasonable expectation of privacy there. See, e.g., State v.

Rodelo, __ N.C. App. __, 752 S.E.2d 766, disc. review denied, __

N.C. __, 762 S.E.2d 204 (2014) (holding that a defendant who

cannot show evidence of either his ownership or possessory

interest or a reasonable expectation of privacy lacks standing

to challenge an alleged Fourth Amendment violation). But even

assuming arguendo Defendant was correct in this assertion, the

scope of the warrant still included Stokes himself, which means

the officers would have had probable cause to search the boxes

once they saw Stokes and Defendant take them out of the pickup

truck. While the officers chose not to search at that time, due

to the unavailability of a S.W.A.T. team and concerns about

safety, the mere fact that the boxes were then placed inside
 -19-
Defendant’s Acadia did not automatically immunize them from

future searches once the vehicle left the property simply

because the vehicle was not listed in the warrant. If anything,

in light of the totality of the circumstances, given the fact

that Stokes was under investigation for marijuana trafficking——

which is an offense that by definition involves moving narcotics

from one location to another, see N.C. Gen. Stat. § 90-95(h)(1)

(2013)——Defendant’s act of putting two boxes large enough to

contain marijuana into his vehicle and then driving away

immediately thereafter was more than sufficient to support a

reasonable suspicion that he was involved in criminal activity.1

1
 In support of his argument to the contrary, Defendant cites
this Court’s unpublished decision in State v. Majett, __ N.C.
App. __, 675 S.E.2d 719 (2009) (unpublished), available at 2009
WL 1192726. We note first that Rule 30(e)(3) of our Rules of
Appellate Procedure provides that this Court’s unpublished
decisions do not constitute controlling legal authority.
Moreover, despite superficial similarities, the present facts
are easily distinguishable from those in Majett, where police
received a tip from an anonymous informant that the defendant
was distributing cocaine from his residence, then found crack
cocaine on three men whom they saw entering and leaving the
defendant’s residence. Although the police in Majett may well
have been able to obtain a warrant to search the defendant’s
residence, they instead chose to stop the defendant’s vehicle
immediately, arrest him, and search for drugs, which they
subsequently found. In reversing his conviction, this Court held
that the stop amounted to an unreasonable seizure because the
police lacked probable cause to effectuate a warrantless arrest
given the absence of any evidence connecting the defendant’s
suspected illegal conduct to his vehicle, which had not broken
 -20-
That being the case, the officers did not need to wait until

Defendant committed a traffic violation or acted evasively to

conduct an investigatory stop. Thus, although the trial court’s

conclusion that Defendant acted evasively was erroneous, we

conclude it was also unnecessary to support a finding of

reasonable suspicion to conduct an investigatory stop in this

case. Accordingly, we hold that the trial court did not err in

denying Defendant’s motion to suppress or plainly err in

admitting this evidence at trial.

 III. Defendant’s motion in limine

 Defendant also argues that the trial court committed plain

error by admitting into evidence the marijuana and other

contraband found at 7202 Shellburne Drive for the purpose of

showing his knowledge that the boxes he received from Stokes

contained marijuana. Specifically, Defendant contends that this

evidence was irrelevant, inadmissible, and prejudicial under

Rules 401, 402, and 404(b) of our Rules of Evidence because

there was no evidence that he had ever been inside 7202

any traffic laws prior to the stop. In the present case, by
contrast, the RPD officers properly obtained a search warrant
for Stokes’ residence, where they directly observed the transfer
of boxes to Defendant’s Acadia, which provided a sufficient
basis for reasonable suspicion for an investigatory stop of his
vehicle.
 -21-
Shellburne Drive, knew its owner, or possessed or was even aware

of the drugs hidden therein. While Defendant’s argument has some

merit with regards to relevance and admissibility, we do not

agree that admission of this evidence was so prejudicial as to

constitute an error “so fundamental as to amount to a

miscarriage of justice” or “which probably resulted in the jury

reaching a different verdict than it otherwise would have

reached.” Brunson, 187 N.C. App. at 477, 653 S.E.2d at 555.

 Rule 401 of our Rules of Evidence defines relevant evidence

as “evidence having any tendency to make the existence of any

fact that is of consequence to the determination of the action

more probable or less probable than it would be without the

evidence.” N.C. Gen. Stat. § 8C-1, Rule 401 (2013). By contrast,

irrelevant evidence has no tendency to prove a fact at issue and

must be excluded. See N.C. Gen. Stat. § 8C-1, Rule 402. However,

irrelevant evidence is typically considered harmless “unless

[the] defendant shows that he was so prejudiced by the erroneous

admission that a different result would have ensued if the

evidence had been excluded.” State v. Moctezuma, 141 N.C. App.

90, 93-94, 539 S.E.2d 52, 55 (2000).

 The issue here, then, is whether the evidence found at 7202

Shellburne Drive increased the probability that Defendant knew
 -22-
that the boxes he received from Stokes contained marijuana. The

State argues that this evidence was properly admitted to show

Defendant’s knowledge under Rule 404(b), which provides that

 [e]vidence of other crimes, wrongs, or acts
 is not admissible to prove the character of
 a person in order to show that he acted in
 conformity therewith. It may, however, be
 admissible for other purposes, such as proof
 of motive, opportunity, intent, preparation,
 plan, knowledge, identity, or absence of
 mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b). Defendant counters that

because there was no evidence that he actually or constructively

possessed the drugs and other contraband found at 7202

Shellburne Drive, it was improper to admit the evidence as

evidence of his knowledge under Rule 404(b). In support of his

argument, he cites this Court’s holding in State v. Moctezuma,

supra.

 In Moctezuma, we held that the trial court erred in

admitting evidence under Rule 404(b) for the purpose of showing

a defendant’s knowledge where there was no evidence connecting

the evidence to any crime, wrong, or act by the defendant. 141

N.C. App. at 95, 539 S.E.2d at 56. There, a confidential

informant told police that three men in a white van with

Tennessee license plates would drive to a residence where a

large quantity of cocaine was located and then conduct a cocaine
 -23-
deal in a grocery store parking lot. Id. at 91, 539 S.E.2d at

54. Pursuant to that tip, police conducted surveillance and

followed the van to a trailer where the defendant and another

man lived; watched the defendant and two other men exit the van,

enter the trailer, and reemerge shortly thereafter; and followed

the van to the grocery store before surrounding it and arresting

its occupants. Id. During the arrest, an officer noticed the

defendant, who had been driving the van, place something wrapped

in white tissue to the right of his seat. Id. Upon inspection,

police found over 136 grams of cocaine in a plastic bag wrapped

in white tissue to the right of the drivers’ seat. Id. When

police returned to the trailer, they found two kilos of cocaine

and other paraphernalia in a bathroom. Id. At trial, the

defendant claimed he was not aware there was cocaine in the van

or in the trailer. Id. at 92, 539 S.E.2d at 54. Over his

objections, the State introduced evidence of the cocaine found

in the trailer to show the defendant’s awareness that there had

been cocaine inside the van. Id.

 On appeal to this Court, we held that the trial court erred

in admitting the cocaine from the trailer under Rule 404(b),

reasoning that because there was no evidence that the defendant

was aware of the cocaine in the trailer that he shared with
 -24-
another man, that evidence could not constitute proof of his

awareness of cocaine in the van, thus rendering it irrelevant

and inadmissible. As we explained,

 Rule 404(b) speaks of “[e]vidence of other
 crimes, wrongs, or acts.” Here, there are no
 crimes, wrongs, or acts with which [the]
 defendant is connected. There was no
 evidence introduced at trial to directly
 link [the] defendant to the drugs seized at
 the trailer in which he occupied a bedroom.
 [The d]efendant was not charged with any
 offense in connection with the drugs seized
 at the trailer, and [the] defendant
 consistently denied any knowledge of such
 drugs.

 Further, the circumstantial evidence
 presented at trial——the fact that drugs
 belonging to other people were discovered at
 the trailer [the] defendant shared with
 others——was too weak to support an inference
 of knowledge on his part. . . . Under these
 circumstances, we find that there was
 insufficient evidence to show that [the]
 defendant knew about the drugs seized at the
 trailer.

Id. at 94-95, 539 S.E.2d at 56.

 In the present case, with regards to the issues of

relevance and admissibility, we find strong parallels between

the marijuana and other contraband found at 7202 Shellburne

Drive and the cocaine found in the trailer in Moctezuma.

Although the State contends that the contraband found at 7202

Shellburne Drive should be admissible to prove Defendant’s
 -25-
knowledge because of its similarity to the marijuana found in

the boxes Defendant received from Stokes, as we explained in

Moctezuma, “Rule 404(b) speaks of evidence of other crimes,

wrongs, or acts,” but here, “there are no crimes, wrongs, or

acts” to connect that contraband with Defendant. See id.

(internal quotation marks omitted). Here, as in Moctezuma,

Defendant was not charged with any offense in connection with

the contraband found at 7202 Shellburne Drive, nor is there any

evidence that Defendant actually or constructively possessed

that contraband or even knew of its existence. Indeed, there is

no evidence Defendant had ever previously visited 7202

Shellburne Drive, and when police searched the residence, they

found no evidence that connected Defendant to it. Moreover, as

Defendant repeatedly emphasized at trial, the contraband found

at 7202 Shellburne Drive was notably dissimilar from the

contraband found in his vehicle insofar as the marijuana was of

a different grade and the buckets were a different color. Under

these circumstances, we find insufficient evidence to show that

Defendant knew about the drugs found at 7202 Shellburne Drive.

Consequently, we do not believe that evidence was either

relevant or admissible to show Defendant’s knowledge of the

contents of the boxes he received from Stokes, and we therefore
 -26-
hold that the trial court erred in denying Defendant’s motion in

limine to exclude it.

 Defendant further contends that the erroneous admission of

this evidence was so prejudicial to him as to constitute plain

error, thus warranting a new trial. Defendant again relies on

Moctezuma to support his argument. There, in reversing the

defendant’s conviction, we held the erroneous admission of

irrelevant evidence to be prejudicial because “the jury could

have easily concluded, given the value and quantity of the

seized drugs, as well as the time spent at trial examining such,

that [the] defendant was a high level drug trafficker.” Id. at

95, 539 S.E.2d at 56. Defendant argues that the same logic

should apply here, and further supports his argument by citing

prior cases in which this Court has found that irrelevant

evidence that leads to the spurious conclusion that the accused

is linked to a huge drug trafficking operation can be

prejudicial. See, e.g., State v. Cuevas, 121 N.C. App. 553, 557-

58, 468 S.E.2d 425, 428, disc. review denied, 343 N.C. 309, 471

S.E.2d 77 (1996) (holding that the trial court erred by

admitting irrelevant evidence that the defendant who was charged

with cocaine trafficking had a stamp on his passport indicating

that he had visited Colombia approximately two months before his
 -27-
arrest, as it tended to mislead the jury as to the level of his

involvement in drug trafficking, but nevertheless affirming his

conviction because the properly admitted evidence against him

was sufficiently overwhelming to make it “unlikely that a

different result would have occurred at trial but for the

introduction of the passport.”). However, given the record

before us, we do not agree that the trial court’s error was “so

fundamental as to amount to a miscarriage of justice” or that it

“probably resulted in the jury reaching a different verdict than

it otherwise would have reached.” Brunson, 187 N.C. App. at 477,

653 S.E.2d at 555.

 Defendant’s argument ignores a critical distinction between

the facts here and what made the erroneous admission of

irrelevant evidence so prejudicial in Moctezuma——specifically,

the radical disparity between the quantity of narcotics found

when Moctezuma was arrested and the quantity found elsewhere

that was erroneously admitted into evidence under Rule 404(b).

In Moctezuma, the defendant was arrested driving a vehicle that

contained roughly 136 grams——or, about four ounces——of cocaine,

but the trial court subsequently admitted evidence that police

had recovered over four pounds of cocaine from his trailer. 141

N.C. App. at 95, 539 S.E.2d at 56. The erroneously admitted
 -28-
contraband taken from the defendant’s shared home was

prejudicial because it magnified the amount of cocaine

purportedly associated with him by a factor of roughly 16, thus

leaving the jury to draw the inference that he was some kind of

drug kingpin. Id. By contrast, there is no such prejudicial

disparity in the present case, given that Defendant was arrested

with over ten pounds of marijuana in his vehicle, while the

police found far less marijuana in their search of 7202

Shellburne Drive. In other words, even without the erroneously

admitted evidence, the jury could still have concluded that

Defendant was a high level drug trafficker or otherwise involved

in a large drug trafficking operation based on the relevant and

properly admitted evidence before it.

 Defendant nevertheless insists that he was prejudiced by

the trial court’s error, emphasizing that the only contested

issue at his trial was his knowledge that the boxes he received

from Stokes contained marijuana and that, apart from the

contraband found at 7202 Shellburne Drive, the State’s evidence

on this point was weak at best. However, this Court has

previously recognized that in narcotics prosecutions, “[i]n the

absence of a confession by [the] defendant that [he knew the

boxes contained marijuana], the State’s proof of [the knowledge]
 -29-
element must of necessity be circumstantial.” State v. Nunez,

204 N.C. App. 164, 168, 693 S.E.2d 223, 226 (2010). Moreover,

“[i]n borderline or close cases, our courts have consistently

expressed a preference for submitting issues to the jury.” State

v. Jenkins, 167 N.C. App. 696, 701, 606 S.E.2d 430, 433 (2005)

(citation and internal quotation marks omitted).

 In the present case, when Defendant took the stand to deny

any knowledge of what was in those boxes, he testified that he

knew Stokes was on federal probation for drug trafficking but

agreed to do him a favor by transporting two large boxes without

inquiring about their contents to an address he had never

previously visited. He also admitted to having pled guilty to

possession of marijuana with intent to sell and deliver in 2009.

Whether or not Defendant knew that the boxes contained marijuana

was a credibility determination for the jury, and although these

facts do not by themselves prove his guilt, they certainly

provided sufficient grounds for the jury to infer that Defendant

should have known what he was getting himself into.

 We therefore conclude that the trial court’s erroneous

decision to admit irrelevant evidence was not “so fundamental as

to amount to a miscarriage of justice” and did not “probably

result[] in the jury reaching a different verdict than it
 -30-
otherwise would have reached.” Brunson, 187 N.C. App. at 477,

653 S.E.2d at 555. Accordingly, we hold that the trial court did

not commit plain error in denying Defendant’s motion to exclude

the evidence found at 7202 Shellburne Drive.

 NO ERROR.

 Judges STEELMAN and GEER concur.